## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-23494-KING

REGINALD BETRAM JOHNSON,

      Petitioner,

v.

MARK INCH, SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____ /

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Petitioner Reginald Bertram Johnson's ("Petitioner") *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (ECF No. 7).  This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable James Lawrence King, Senior United States District Judge, to take all necessary and proper action as required by law with respect to any and all pretrial matters.  (ECF No. 31).  The Court entered an Order to Show Cause ordering Respondent, Secretary of the Florida Department of Corrections, to file a memorandum of fact and law to show cause why the Petition should not be granted (ECF No. 17).  Respondent filed a Response to the Court's Order to Show Cause addressing the arguments raised in the Petition (ECF No. 22).  The undersigned has carefully reviewed the Petition, Response, the record, and governing law, and respectfully **RECOMMENDS** that the Petition be **DENIED** as follows.

1

## I.      BACKGROUND

Petitioner was charged by Amended Information in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, with two counts of armed sexual battery, in violation of Fla. Stat. § 794.011(3) (Counts 1 and 4); armed robbery, in violation of Fla. Stat. § 812.13(2)(A) (Count 2); armed kidnapping, in violation of Fla. Stat. § 787.01(2) (Count 3); two counts of lewd and lascivious molestation of a child between the ages of twelve and sixteen, in violation of Fla. Stat. § 800.04(5)(C) (Counts 5 and 6); and felon in possession of a firearm, in violation of Fla. Stat. § 790.23(1) (Count 7).  (ECF No. 15-1, Ex. E at 122–30).[1]

Petitioner moved to dismiss the charges, based on expiration of the statute of limitations. Petitioner's Motion to Dismiss was granted in part and denied in part, resulting in dismissal of the armed robbery (Count 2) and the felon in possession of a firearm (Count 7) offenses.  (*Id.*, Ex. F at 132–35).  Petitioner next filed a writ of prohibition with the appellate court seeking to prevent the State from proceeding to trial on the remaining charges, renewing his statute of limitations argument.  (ECF No. 15-2, Ex. G at 1–25).  Following the State's response, the appellate court denied the petition without prejudice.  *See Johnson v. State,* 75 So. 3d 1267 (Fla. 3d DCA 2011) (unpublished table decision).

Petitioner proceeded to trial.  The jury returned a verdict finding Petitioner guilty of two counts of sexual battery with a deadly weapon (Counts 1 and 4), kidnapping without a firearm (Count 3), and lewd and lascivious molestation of a child, over twelve, but under the age of sixteen years, with a firearm (Count 5).  (ECF No. 15-2, Ex. H at 36–37).[2]  Petitioner was adjudicated

---

[1]  Unless otherwise noted, the page numbers identifying Respondent's Appendix, docketed at ECF No. 15-1 to 15-3, are those imprinted by CM/ECF, the Court's electronic docketing system on the upper, right-hand corner of the filings. The letter "T" in this report followed by a page number refers to the trial transcripts and the actual page number mentioned.  *See* (ECF No. 16).

[2]  As to Count 4, the jury returned a verdict finding Petitioner guilty of lewd and lascivious molestation, checking off that the conduct involved both a child under the age of 16 years and an adult over the age of 18 years because it checked "yes" as to both.  (ECF Nos. 15-2, Ex. H at 37; 16-6, T. 692–93).  A Corrected Sentence was entered to reflect

guilty and sentenced to three concurrent terms of life imprisonment as to Counts 1, 2, and 3, and thirty years of imprisonment as to Count 5.  (*Id.,* Ex. I at 39).

Petitioner appealed the verdict and raised two errors: that the trial court erred in admitting a DNA report; and a double jeopardy claim regarding his convictions for sexual battery and lewd and lascivious molestation.  *See Johnson v. State,* 117 So. 3d 1238 (Fla. 3d DCA 2013).  On July 10, 2013, the appellate court affirmed in part, reversed in part, and remanded with instructions to vacate Petitioner's lewd and lascivious molestation conviction (Count 5), finding a double jeopardy violation because the record did "not support a lewd and lascivious molestation conviction in addition to and separate from the sexual battery convictions."[3]  *See id*. at 1245. Review was denied by the Florida Supreme Court.  *Johnson v. State*, 147 So. 3d 524 (Fla. 2014). Certiorari review was denied by the United States Supreme Court on October 6, 2014.  *See Johnson v. Florida*, 574 U.S. 896 (2014).

Petitioner then filed a motion for post-conviction relief, pursuant to Fla. R. Crim. P. 3.850 ("Rule 3.850 Motion"), raising multiple claims challenging counsel's effectiveness, including those raised in this Petition.  (ECF No. 15-3, Ex. L at 2–33).[4]  The trial court entered an Order summarily denying Petitioner's motion.  (*Id.*, Ex. M at 40–45).  Following rehearing on appeal, the appellate court affirmed in part, and reversed in part, vacating the Order solely as to Petitioner's claim that counsel failed to call witnesses at trial, and remanded with instructions for the trial court to attach documents demonstrating Petitioner was not entitled to relief on the claim.  *See Johnson*

---

that the conviction for lewd and lascivious molestation was as charged in Count 5 of the Amended Information, not Count 4, and that the conviction for kidnapping with a firearm is Count 3 of the Amended Information, not Count 2, as noted in the parentheticals on the Verdict Form (ECF No. 15-2, Ex. H at 39-41, 42-43).

[3]  Neither Petitioner nor Respondent mention whether an amended or corrected judgment was entered pursuant to the appellate court's mandate.  This is of no consequence to resolution of this federal proceeding, as Respondent has explicitly conceded this Petition is timely.

[4]  Petitioner also filed multiple mandamus petitions, but they are not relevant to the resolution of the claims before this Court.

*v. State*, 203 So. 3d 916 (Fla. 3d DCA 2016).  The proceeding concluded with the issuance of the mandate on July 7, 2016.  (ECF No. 15-3, Ex. N. at 47).

Following remand, the trial court entered an order denying Petitioner's claim regarding counsel's failure to call witnesses to testify at trial (claim 12 of the Rule 3.850 Motion), finding that the proffered testimony of the witnesses offered to impeach the victim's testimony on a collateral matter was precluded by the Rape Shield Statute and inadmissible under any hearsay exception.  (ECF No. 15-3, Ex. N at 73–75).  That denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion.  *See Johnson v. State*, 252 So. 3d 221 (Fla. 3d DCA 2018) (unpublished table decision).  Rehearing was denied, and the proceedings concluded with the issuance of the mandate on September 12, 2018.  (ECF No. 15-3, Ex. P at 71).

Plaintiff then sought a writ of habeas corpus.  Plaintiff filed his initial Petition on August 14, 2019, by handing it to prison officials for mailing, as evidenced by the prison facility stamp. (ECF No. 1).[5]  On September 6, 2019, Petitioner filed his Amended Petition.  (ECF No. 7 at 21).

## II.    LEGAL STANDARD

### a.    Federal Habeas Review

The court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016).  The AEDPA ensures that federal habeas corpus relief works to "guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *See Greene v. Fisher*, 565 U.S. 34, 38 (2011); *Ledford*, 818 F.3d at 642.  The

---

[5] Absent evidence to the contrary, in accordance with the prison mailbox rule, a *pro se* prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing.  *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam); Fed. R. App. P. 4(c)(1).

"AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (citations omitted).

The AEDPA standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 420 (2014). It imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted). The Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1350 (11th Cir. 2019). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 182; *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

Under the AEDPA, a federal court may not grant a habeas petition relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017). Thus, district courts must first identify the last state court decision, if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining

its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference.  *See Harrington*, 562 U.S. at 100; *Meders*, 911 F.3d at 1351 (citation omitted).

Further, for purposes of federal habeas review, "clearly established federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions at the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Lee*, 726 F.3d at 1192 (citation omitted).  "A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction becomes final does not control the disposition of the petitioner's habeas proceeding."  *Gary v. Hall*, 558 F.3d 1229, 1254 (11th Cir. 2009) (citing *Newland v. Hall*, 527 F.3d 1162, 1196–1201 (11th Cir. 2008)).

Petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all of the facts necessary to demonstrate a constitutional violation.  *See Fillmore v. Perry*, 163 F. App'x 819, 820 (11th Cir. 2006) (per curiam) (citing *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)).  Thus, to warrant relief, Petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Lee*, 726 F.3d at 1192 (quoting *Harrington*, 560 U.S. at 101–02).  An unreasonable application of federal law differs from an incorrect application of federal law.  *Renico*, 559 U.S. at 773 (citation omitted).  Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)."  *Landers v. Warden*, *Att'y Gen., State of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted).  That is, "[a] state court's . . . determination of the facts is unreasonable only if no fairminded jurist could agree with the state court's determination . . ."  *Holsey v. Warden, Ga.*

6

*Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Notably, where "no state court has adjudicated the merits of a claim that was properly presented, 'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo*.'" *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1151 (11th Cir. 2017) (alteration in original) (quoting *Conel*, 556 U.S. at 472). Even where a state court decision "addresses some but not all of a defendant's claims," that decision is an adjudication "on the merits" for purposes of the AEDPA. *See Johnson v. Williams*, 568 U.S. 289, 298–99 (2013) (observing some claims may be too insubstantial to merit discussion). Federal courts are authorized to deny a federal relief when the claim is subject to rejection under *de novo* review, regardless of whether the AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if his claim is rejected on *de novo* review); *Connor v. GDCP Warden*, 784 F.3d 752, 767 n.16 (11th Cir. 2015) ("[B]ecause we conclude that Mr. Connor would not be entitled to habeas relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies.").

### b.    Ineffective Assistance of Counsel

Petitioner's claims challenging counsel's effectiveness are governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). The two-prong test requires Petitioner to demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficiency resulted in prejudice. *See Strickland*, 466 U.S.

at 694.   Deficient performance requires Petitioner to demonstrate counsel's actions were unreasonable or fell below prevailing professional competence demanded of defense attorneys. *Id.* at 688.  The *Strickland* deficiency prong does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).  Even with the benefit of hindsight, where counsel's decision appears unwise, it will only be ineffective if it was so unreasonable no attorney would have chosen it.  *Id.* at 1099. *Strickland*'s prejudice prong requires Petitioner to establish that, but for counsel's deficiency, there is a reasonable probability that the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  If Petitioner cannot meet one of *Strickland*'s prongs, the Court need not address the other prong.  *Id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).  Also, bare and conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

## III.   DISCUSSION

Courts cannot masquerade as de facto counsel for *pro se* litigants.  *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004).  But *pro se* filings are held to a less stringent standard than those submitted by practicing attorneys.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   As such, the undersigned liberally construes Petitioner's arguments in her analysis.  *See Cade v. Inch*, No. 18-10068-CV, 2021 WL 3639829, at *1 (S.D. Fla. July 23, 2021), *report and recommendation adopted*, No. 18-10068-CIV, 2021 WL 3639618 (S.D. Fla. Aug. 17, 2021) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam)).

The undersigned has considered all of Petitioner's arguments in support of his claims for relief. *See Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013) (finding that courts shall review petitioner's claims so long as the claims are presented in a clear and simple language so that the court may not misunderstand it). To the extent a claim was not considered in the state forum, under *de novo* review, the claims do not warrant relief. Whether a precise argument was not specifically addressed herein or in the state forum, all arguments were considered and found to be devoid of merit, even if not discussed in detail.[6] As explained below, Petitioner fails to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law.

Petitioner raises the following seven claims in his Amended Petition:

1.    Counsel was ineffective for failing to file a motion to suppress illegally obtained DNA evidence.

2.    The trial court violated Petitioner's confrontation rights by admitting into evidence a forensic analysis report containing testimonial hearsay.

3.    Counsel was ineffective for failing to challenge the admission of DNA results because it did not meet the standards set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

4.    Counsel was ineffective for failing request that the jury panel be stricken after a juror admitted during jury selection that discussions and deliberations had begun, despite the court's instructions not to do so.

5.    Counsel was ineffective for failing to object to the prosecutor's comments during the victim's testimony and closing argument.

---

[6]  The undersigned is mindful that *Clisby* requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992). However, nothing in *Clisby* requires, much less suggests, consideration of claims or arguments raised for the first time in objections. If Petitioner attempts to raise arguments or further factual support for his claim in objections, the Court should exercise its broad discretion and refuse to consider the arguments not raised before the Magistrate Judge in the first instance. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)).

6.      Counsel was ineffective for failing to impeach the victim, C.A., with prior inconsistent statements.

7.      Counsel was ineffective for eliciting testimony from the victim, C.A., regarding her virginity.

Respondent concedes that the Amended Petition was timely filed.  Because Respondent has explicitly waived the statute of limitations defense, this Court need not determine whether the waiver is accurate.  *See* 28 U.S.C. §2244(d)(1)–(2); *Wood v. Milyard*, 566 U.S. 463, 473 (2012) (holding that a district court abuses its discretion by considering a statute of limitation defense that has been affirmatively waived, as opposed to merely forfeited).

Respondent has also waived the exhaustion defense, explicitly conceding that all claims raised in the Amended Petition were exhausted in the state forum.  It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits.  *See* 28 U.S.C. § 2254(b)(1); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) (quoting *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012)).  Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review.  *See Preston*, 785 F.3d at 457; *Baldwin v. Reese*, 541 U.S. 27, 33–34 (2004).  Respondent's explicit waiver of exhaustion appears correct, as the claims raised herein were properly exhausted in the Rule 3.850 proceedings and on direct appeal.  Thus, Petitioner's claims are ripe for federal habeas corpus review.  The undersigned addresses each claim below.

a.      **Failure to File Motion to Suppress**

In his first claim, Petitioner asserts that counsel was ineffective for failing to file a motion to suppress illegally obtained DNA evidence.  Respondent argues in response that Petitioner has

not shown *Strickland* deficiency or prejudice so that the rejection of the claim in the Rule 3.850 proceeding was not an unreasonable application of federal constitutional principles and should not be disturbed here.

Although Petitioner does not identify on what bases counsel should have sought suppression of the DNA evidence in his Petition, the undersigned considers Petitioner's arguments raised in his Rule 3.850 Motion. *See Cade*, 2021 WL 3639829, at *1 (construing the *pro se* petitioner's arguments liberally). Petitioner argued at the Rule 3.850 hearing that (1) the search warrant lacked specificity regarding the "things to be seized;" and, (2) the initial warrantless swab by his probation officer lacked probable cause so that law enforcement could not use the FDLE letter to obtain the search warrant.

### i.      Lack of Specificity in the Arrest Warrant

Under the Fourth Amendment, a search warrant must describe the geographical location where law enforcement are authorized to search, together with a description of the things to be seized, with sufficient particularity so that the precise language informs officers how to separate properly seized items from irrelevant items in order "to protect individuals from being subjected to general, exploratory searches." *See United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). Unless law enforcement's conduct went beyond a reasonable interpretation of the warrant's provisions, suppression of all items seized, including those within the warrant's scope is not warranted. *Id.* at 1289 (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir. 1982) (citation omitted)). "Elaborate specificity," however, "is unnecessary." *See United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984).

Here, the contested search warrant commanded law enforcement to "enter and search

forthwith 'The Body' above-described for 'The Property' above-described, to wit: saliva samples serving this Warrant . . . to seize the same as evidence, . . . and prepare a written Inventory of the property seized . . ."  (ECF No. 35-1, Ex. M at 149–50).  The search warrant authorized law enforcement to seize "SALIVA SAMPLES" from "in 'The Body,' described as REGINALD BERTRAM JOHNSON, B/M, DOB: [redacted], SOCIAL SECURITY NUMBER [redacted] . . ." on the bases that Petitioner had committed armed sexual battery, in violation of Fla. Stat. § 794.011(3) and armed kidnapping, in violation of Fla. Stat. § 787.01(1)(a).  (*Id*.)  The Search Warrant did not lack specificity, because it described Petitioner's body as the location where law enforcement were authorized to search, and specifically indicated law enforcement were to seize "saliva samples."  Thus, counsel had no duty to raise a meritless lack of specificity argument prior to trial.  Petitioner has not demonstrated that the rejection of the claim in the Rule 3.850 proceeding was an unreasonable application of *Strickland* and relief is not warranted here.

*ii.*      *Probable Cause to Support the Search Warrant Affidavit*

Petitioner further alleges the initial warrantless DNA swab by his probation officer in 2007 lacked probable cause so that law enforcement could not rely on a subsequent FDLE letter to obtain a later search warrant authorizing seizure of saliva samples.  Petitioner does not explain why his probation officer lacked probable cause and, more importantly, Petitioner has not shown that law enforcement lacked probable cause to obtain the search warrant used to obtain his saliva swabs following an interview by law enforcement relating to C.A.'s allegations.

In his Rule 3.850 Motion, Petitioner explained that the results of a 2007 DNA swab by his probation officer were entered into the FDLE database, leading to a "possible hit in a 2000 rape and kidnapping case."  (*Id.*)  Petitioner maintained an FDLE letter[7] was unlawfully used to start

---

[7]  Petitioner attached to his Rule 3.850 Motion a March 27, 2008 letter from Mary E. Cortese ("Cortese"), the DNA Investigative Support Database FDLE, State CODIS Administrator, stating that "during a routine search of Florida's

investigating him as a suspect in the case under collateral attack here, No. F08-15692.  He claimed

the challenged Search Warrant and Probable Cause Affidavit used to obtain his DNA standard

concerned an "entirely different victim [J.G.] and case," later *nolle prossed* by the State (ECF No.

15-3, Ex. L at 6).[8]  Petitioner suggests this may have confused the jury, arguing that the victim in

this case, C.A., was never able to identify him, there were no eyewitnesses, and there was no

evidence linking him to the charged offenses, except for the purportedly illegally obtained DNA

standard.  After applying *Strickland,* the trial court denied relief, finding the claim "frivolous" and

without "legal basis, as the DNA swab taken by the probation officer was never introduced as part

of the State's case in chief," and "the actual DNA standard swabs" were "obtained pursuant to a

DNA Search Warrant which had sufficient probable cause" (ECF No. 15-3, Ex. M. at 37, ¶ 5.a.).

That denial was subsequently *per curiam* affirmed on appeal.  *Johnson*, 203 So. 3d at 918.

Respondent argues that Petitioner has not shown *Strickland* deficiency or prejudice and

thus the rejection of the claim in the Rule 3.850 proceeding was not an unreasonable application

of federal constitutional principles.  To challenge "the integrity of a warrant under the Fourth

Amendment, a defendant must make a substantial showing of a 'deliberate falsehood or reckless

disregard for the truth,' in the affidavit supporting the issuance of the warrant."  *See Green v.*

*Nelson*, 595 F.3d 1245, 1252 (11th Cir. 2010) (quoting *Franks v. Delaware*, 438 U.S. 154, 171

---

Convicted Offender DNA Database a match occurred with a DNA profile referenced to Miami-Dade Police Department Crime Lab's case numbers 473225W/22511EM and 693496X/49607M and a convicted offender sample 2007-042290" (ECF No. 35-1, Ex. M at 148).  Cortese confirmed that the DNA sample for the convicted offense, number 2007-042290, belonged to "Reginald Johnson" with a date of birth "07/27/1959," and a "state identification number 01341250" (*id.*).

[8]  The Search Warrant at issue was supported by a Probable Cause Affidavit of Detective Kurtis Lueck (the "Lueck Affidavit"), who was employed with the Miami-Dade Police Department ("MDPD") (ECF No. 35-1, Ex. M at 151–53).  The Lueck Affidavit states that, on September 20, 1999, Detective Pamela Austin-Jones ("Det. Jones") with the MDPD Sexual Crimes Unit ("Sex Unit"), was investigating an armed sexual battery offense, involving victim, J.G., who claimed she was forced into the back of a vehicle and sexually assaulted by an unknown black male on September 20, 1999 (*id.*).  During a medical examination, specimens were collected from J.G.  On April 25, 2008, the Sexual Crimes Bureau was notified by MDPD Crime Laboratory Bureau of a DNA hit regarding the investigation, confirming that the male DNA profile obtained from evidence secured during the J.G. investigation matched Petitioner's DNA profile in the FDLE Convicted Offenders Database (*id.*).

(1978)).  If a defendant makes this showing, then courts must examine the affidavit "with the incorrect assertions set aside to determine if the remaining information is sufficient to establish probable cause."  *Id.* at 171–72.  Petitioner has not alleged in the state forum or in this habeas proceeding that the Probable Cause Affidavit supporting the Search Warrant contained a "deliberate falsehood" or "reckless disregard for the truth."  *See Green*, 595 F.3d at 1252.  This is fatal to his claim.

The Probable Cause Affidavit alleged sufficient facts to support a finding that a DNA match existed between DNA obtained from the victim (C.A.) and the DNA profile of Petitioner on the FDLE offender site and thus it is reasonable for the trial court to have determined probable cause existed to support issuance of the search warrant.[9]  *See United States v. Powell*, No. 2:17-CR-00021-RWS-JCF, 2018 WL 6706053, at *4 (N.D. Ga. Oct. 19, 2018), *report and recommendation adopted*, 2018 WL 6701702 (N.D. Ga. Dec. 20, 2018) (citations omitted).  But even if Petitioner's DNA sample was taken in violation of Petitioner's Fourth Amendment rights, the DNA match would have inevitably been discovered because Petitioner's DNA was in the Combined DNA Indexing System ("CODIS") database due to a prior arrest and/or conviction.  As such, the DNA sample would not have been suppressed based on the inevitable discovery doctrine.  *See Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004) (finding that evidence is not

---

[9] Det. Lueck's Probable Cause Affidavit reveals that he was investigating Petitioner regarding another sexual assault with a different victim from September 30, 1999 when, on April 25, 2008, the Sexual Crimes Unit was notified by the MDPD of a DNA hit regarding C.A.'s assault.  The information provided by the MDPD's Crime Laboratory Bureau revealed that the male DNA profile matched Petitioner's DNA profile in the FDLE Convicted Offender Database.  Det. Lueck's Affidavit further revealed that on April 28, 2008, the victim, C.A., was shown Petitioner's photograph, but she denied knowing him.  Det. Signori testified at trial that after Petitioner was advised of and waived his constitutional rights, he was shown C.A.'s photograph, but denied knowing her and denied having consensual sex with her.  When Det. Signori advised Petitioner that they had physical DNA evidence linking him to the victim, Petitioner equivocated, stating he might have dated her, but could not recognize her.  As a result, Det. Lueck requested issuance of a search warrant to seize Petitioner's saliva samples.  The state court found probable cause and issued a search warrant to seize saliva samples from Petitioner.

excludable if there is a reasonable probability that the evidence would have been discovered by lawful means).

Petitioner cannot establish deficient performance on the part of counsel for failing to file a motion to suppress because it is unlikely that such a motion would have been successful. *See Chandler v. Moore*, 240 F.3d 907, 917–18 (11th Cir. 2001) (rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim). Furthermore, Petitioner cannot show that there is reasonable probability that the verdict would have been different absent the excludable evidence given that a DNA match was made based on Petitioner's prior sample contained in the CODIS database. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### b.    Confrontation Rights Violation

Petitioner asserts in his second claim that the trial court violated his confrontation rights by admitting into evidence a forensic analysis report containing testimonial hearsay when its author was not called to testify at trial and could not be cross-examined. Respondent argues that Petitioner is not entitled to relief as there was no confrontation rights violation. When the identical claim was raised and rejected on direct appeal, the state appellate court found, in relevant part, that the "report was properly admitted as a business record" exception to the hearsay rule, and "the introduction of the DNA evidence and Dr. Silla's report did not deprive the defendant of his confrontation rights." *See Johnson*, 117 So. 3d at 1243. As explained below, there was no confrontation rights violation, thus the rejection of the claim in the state forum was not an unreasonable application of federal constitutional principles.

Under federal law, the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is

unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. *Crawford v. Washington*, 541 U.S. 36, 61 (2004). "Only [testimonial statements] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51).

Here, the appellate court affirmed the trial court's conclusion that there was no confrontation rights violation because "the person who actually performed the DNA test, Sharon Hinz, testified and was cross-examined by defense counsel at trial." *Johnson,* 117 So. 3d at 1245. At trial, Hinz testified that it was her job to write an administrative report based on the technical review made by another individual. Hinz also testified that she prepared a January 9, 2001 report in C.A.'s case (No. 693496X) based on her testing of the vaginal and cervical swabs taken by Dr. Silla during his examination of C.A. When shown State's Composite Exhibit 8, C.A.'s rape treatment kit, Hinz confirmed it was her initials on the package and that Dr. Silla placed the brown paper bag within a plastic bag. Based on her testing of this evidence, Hinz confirmed that in 2001, the "semen presumptive was positive," meaning she observed sperm in the sample (ECF No. 16-3, Ex. C, T. 936–97). Thereafter, she performed a DNA analysis on the items. After explaining the process for performing a DNA analysis, Hinz identified at trial an oral standards from Petitioner bearing her initials, the date, item number, and the case number.[10] Hinz also confirmed she prepared a September 26, 2008 report which revealed that after vaginal swabs from C.A. were compared to Petitioner's standard sample, the dye profiles from C.A.'s vaginal swabs matched Petitioner's profile.[11] Further, Nurse Carter "was present and assisted Dr. Silla in his examination and his collection of the evidence, also signed the report documenting the events, and she also

---

[10]  Although the report listed C.A.'s case number and another, during a recess, the parties agreed to remove the reference to the other case number (ECF No. 16-4, Ex. D, T. 415–16).
[11]  Hinz testified that the chance of finding that profile in an unrelated individual in the population at large was one in 29.8 billion.

testified and was cross-examined by defense counsel at trial." *Id.* at 421*; see also* (ECF No. 16-4, Ex. D, T. 452–54, 463, 476–77).

Neither the Supreme Court of the United States nor the Eleventh Circuit have required that "anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *See Melendez-Diaz*, 577 U.S. at 311 n.1.  The Supreme Court made clear that "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility," and thus it is up to the prosecution to determine the testimony and what crucial steps in the chain of custody are necessary at trial.  *Id.* at 311.

As applied, there was no Confrontation Clause violation because Hinz's testimony that she examined and tested the evidence, matching the DNA profile from the samples taken from C.A. to Petitioner's DNA profile, was subjected to extensive cross-examination by the defense regarding her testing and findings.  On this record, the state court did not err in determining that admission of the forensic DNA report did not violate Petitioner's confrontation rights, nor was Petitioner's trial rendered fundamentally unfair resulting from the state's failure to call Dr. Silla to testify at trial regarding the securing of the specimens and its chain of custody.  Accordingly, Petitioner has not demonstrated prejudice under *Strickland* arising from counsel's failure to pursue this claim.

c.     **Violation of *Frye* Standard Regarding Admission of DNA**

In his third claim, Petitioner asserts counsel failed to challenge the admission of the DNA results on the basis that it did not meet the *Frye* standards for admission in 2007.  Petitioner maintains that fifteen alleles was the standard for DNA comparison, not the nine alleles used to identify Petitioner in this case.

When raised at the Rule 3.850 proceeding, the trial court denied relief, discussing how the Third District Court of Appeal had addressed the Florida courts' "shift from *Frye* to *Daubert*"[12] regarding the admissibility of scientific evidence.  Relying on *Daubert,* the court noted that for testimony to qualify as scientific knowledge, it must be understood and applied in the field of science to aid the trier of fact with information that actually can be or has been tested within the scientific method.  The trial court further noted that general acceptance in the scientific community is only one factor among several in determining admissibility, and subjective belief and unsupported speculation are inadmissible.  The trial court found the determination of Petitioner's DNA "reliable and up to standards," finding the scientific method had been deemed reliable, where Petitioner's DNA was matched at "1 in 29 billion" (ECF No. 35-1, Ex. M at 6).  That denial was subsequently *per curiam* affirmed on appeal.  *Johnson*, 203 So. 3d at 918 (affirming denial of all claims, with the exception of the claim regarding the failure to call witnesses to testify at trial).

As applied, Petitioner has not demonstrated in the state forum or this habeas proceeding how the DNA testing and results conducted by Hinz and her resultant report thereon positively identifying Petitioner as C.A.'s assailant was inadmissible under either *Frye* or *Daubert*.  Thus, counsel cannot be deemed deficient for failing to challenge the admission of the DNA results or to object to the DNA testing procedures.  *See Knowles v. Mirzayance*, 556 U.S. 111, 123–27 (2009) (defense counsel not required to pursue every claim or defense, regardless of its merit, viability or realistic chance for success); *Chandler*, 240 F.3d at 917.  Therefore, the rejection of this claim in the Rule 3.850 proceeding was neither contrary to, nor an unreasonable application of, federal constitutional principles, and should therefore not be disturbed here.

### d.   Failure to Strike Jury Panel

---

[12] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Petitioner asserts in his fourth claim that his counsel failed to request that the court strike the jury panel after a juror admitted during jury selection that jurors had been discussing the case and had begun deliberations, despite the court's instructions not to do so.  Respondent argues Petitioner's claim is belied by the record.

Petitioner does not identify which juror made the comment that forms the basis of this claim.  Reviewing his Rule 3.850 Motion, however, Petitioner cited to an excerpt of *voir dire* during which defense counsel asked the venire panel whether anyone had "any religious or moral impediment that prevents them from sitting in judgment of another."  *See* (ECF No. 15-3, Ex. L at 13) (citing (ECF No. 16-1, Ex. A, T. 145)).  In response, one venire panel member indicated that she "didn't feel comfortable with it all," even with deliberating in a room, given the questions posed by the parties.  *Id*.  Petitioner argued that, at that point, counsel had a duty to ask further follow-up questions regarding the impartiality of the venire panel in light of her comment. Assuming this is the same error about which he now complains, his contention is incorrect.

First, this particular venire member was not selected as a juror.  Moreover, after the six jurors and one alternate were selected, the court gave a cautionary instruction, instructing the jurors not to discuss the case with each other, or with anyone at all.  The court further advised the jury that it would only be able to discuss the case amongst each other when they were deliberating, after they had heard all the evidence, closing arguments, and the court had instructed them on the law.

The Florida Supreme Court has previously rejected an ineffective assistance of counsel claim arising from counsel's failure to seek dismissal of the venire panel.  *See Johnson v. State*, 903 So. 2d 888, 896–97 (Fla. 2005) (per curiam).  The Florida Supreme court explained that "[i]n order for the statement of one venire member to taint the panel, the venire member must mention

facts that would not otherwise be presented to the jury. . ." and "a venire member's expression of an opinion before the entire panel is not normally considered sufficient to taint the remainder of the panel." *See id.* (citing *Brown v. State*, 727 So. 2d 1026, 1027 (Fla. 4th DCA 1999)).

The Eleventh Circuit has also made clear that a party wishing to strike a venire panel must demonstrate an "express admission of bias," or "proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed." *See Ward v. United States*, 694 F.2d 654, 665 (11th Cir. 1983). Petitioner cannot meet this burden. In fact, even if the issue had been raised by counsel, the court could have correctly refused to strike the venire panel. *See United States v. Khoury*, 901 F.2d 948, 955 (11th Cir. 1990), *opinion modified on denial of reh'g*, 910 F.2d 713 (11th Cir. 1990) (affirming denial of motion to strike entire venire panel, presuming jurors were fair and impartial, as sworn to be, after one juror stricken for cause for making comment that her son had been charged with a crime and murdered in a drug-related incident and began crying before the entire panel) (citing *United States v. Tegzes*, 715 F.2d 505, 508 (11th Cir. 1983)).

Petitioner has not shown that the venire member's comments were biased or how the answers support his current contention that the venire had been deliberating or otherwise discussing the case. Once the jury panel was selected, the court instructed the venire that it was their role as factfinders to be fair and impartial and to listen to the facts adduced at trial to arrive at a verdict, in light of the court's instructions. It is presumed that Petitioner's jury followed the court's instructions when arriving at its verdict. *See, e.g.*, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Thus, the rejection of the claim in the Rule 3.850 proceeding comported with applicable federal constitutional principles and should not be disturbed here.

### e.     Failure to Object to Identification Testimony

In his fifth claim, Petitioner asserts that counsel failed to object to the prosecutor's comments during direct examination and during closing argument regarding Petitioner's identification.  Petitioner claims that during C.A.'s direct examination, the prosecutor improperly made "several improper comments" suggesting that Petitioner was, in fact, the assailant. Specifically, Petitioner cites to an excerpt of the record when the prosecutor asked the victim whether she knew Reginald Johnson (Petitioner) or the man who did this to her, and both times C.A. responded she did not.  When asked if she would recognize her assailant if she saw him, the victim testified that she could only remember the scars on his face.  Petitioner claims the prosecutor's questions referring to Petitioner by name improperly identified him as the victim's assailant.  Petitioner also alleges that during closing argument, the prosecution failed to confine its argument to the evidence in the record.  In its response, Respondent argues Petitioner's claim is not supported by the record.

To warrant a new trial based on prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's comments (1) were improper and (2) prejudiced his substantive rights.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642–45 (1974); *United States v. St. Paul*, 175 F.3d 906, 909 (11th Cir. 1999).  To demonstrate that a prosecutor's prejudicial comments affected a petitioner's substantial rights requires there be a reasonable probability that, but for the remarks, the outcome of the trial would have been different.  *See United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).  Petitioner has not demonstrated that the prosecutor's references to Petitioner by name during examination of the victim, nor comments during closing argument, affected Petitioner's substantial rights.

When viewing the prosecutor's questioning of the victim and closing arguments in relation to the evidence adduced at trial, it is clear the prosecutor's questions and closing argument did not

render Petitioner's trial fundamentally unfair.  *Cf. Cardona v. State*, 185 So. 3d 514, 520 (Fla. 2016) (per curiam) (finding repeated, impermissible comments urging jury to seek justice for minor victim and relying on facts not in evidence served no purpose other than to ridicule defendant properly preserved reviewed for abuse of discretion).

First, nothing in the record suggests the prosecutor made statements or improperly identified Petitioner in a deliberate attempt to distract the jury or mislead the jurors as to issues of guilt or innocence.  *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995) ("Claims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record.") (citations omitted).  Second, the evidence at trial was more than sufficient so that the alleged prosecutorial misconduct did not alter the outcome of the proceedings.

At trial, the forensic evidence demonstrated that vaginal swabs taken in 2001 from the victim, C.A., matched Petitioner's DNA.  Moreover, Hinz testified that ". . .the frequency, which is the evidence DNA profile is expected to be found in an unrelated individual in the population at large is one in twenty-nine-point-eight billion" (ECF No. 16-4 at T. 422–23).  Considering this evidence and the record as a whole, the jury found Petitioner guilty.  Given the totality of the circumstances, including the strength of the evidence at trial, even if there had been prosecutorial misconduct as alleged, it was, at worst, no more than harmless error.  *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict)).  Accordingly, Petitioner has not demonstrated *Strickland* deficiency or prejudice arising from counsel's failure to object to the prosecutor's improper questions or closing argument.

      **f.**        **Failure to Impeach the Victim**

Petitioner asserts in his sixth claim that counsel failed to impeach the victim, C.A., with prior inconsistent statements.  Petitioner claims the victim's trial testimony was different than the statement she provided to Det. Signori.  He suggests the victim's statement was "completely different" to her testimony at trial regarding how events occurred.  Respondent argues that Petitioner is not entitled to relief on this claim, having failed to establish *Strickland* prejudice.

Petitioner's suggestion that counsel did not effectively cross-examine and impeach the victim with her prior inconsistent statements to Det. Signori is refuted by the record which reveals that counsel vigorously cross-examined the victim regarding the inconsistencies in her testimony. When cross-examined, the victim responded that she could not recall the specifics of her statements to law enforcement on the day of the incident.  Regardless, given the DNA profile match, in addition to C.A.'s testimony at trial, Petitioner has not demonstrated that further attempts at impeachment would have altered the outcome of trial.

Furthermore, the MDPD Incident Report containing the victim's statement to law enforcement is not inconsistent with C.A.'s trial testimony regarding certain key elements of the offenses, including the fact that Petitioner appeared from behind with a handgun, held it to her head, and ordered her into his car.  Though Petitioner complains that counsel failed to impeach the victim with inconsistencies about her exact physical position at the time of the sexual assault, Petitioner has not shown that this would have altered the outcome of the trial, resulting in an acquittal of the charges.  Moreover, the jury was instructed on weighing the credibility of the evidence, and witness testimony.  The jury's credibility findings should not be second-guessed here. *See United States v. Vargas*, 792 F. App'x 764, 775 (11th Cir. 2019) (quoting *United States v. Hernandez*, 743 F.3d 812, 814 (11th Cir. 2014) (per curiam) (finding the jury has exclusive province over credibility of witnesses) (quoting *United States v. Emmanuel*, 565 F.3d 1324, 1334

(11th Cir. 2009))).   Because the rejection of the claim in the state forum was a reasonable application of *Strickland*, and Petitioner failed to demonstrate *Strickland* prejudice, he is not entitled to relief here.

> **g.**     **Improper Cross-Examination of Victim**

In his seventh claim, Petitioner asserts that counsel was ineffective for eliciting testimony from the victim which suggested she lost her virginity at the time of the sexual assault.   Petitioner claims this testimony was highly inflammatory and emotional especially where the victim had previously engaged in consensual sexual intercourse in the months before the alleged attack. Respondent argues Petitioner has not shown *Strickland* prejudice.

Petitioner cites an excerpt of counsel's cross-examination when he asked the victim, "And you never wanted your parents to know about this because you were afraid?" (ECF No. 16-5, Ex. E, T. 562).   The victim responded, "Because I was afraid of my dad finding out I wasn't a virgin anymore." *Id*.   Defense counsel then requested a sidebar conference during which he advised the court that given the victim's testimony and the fact that reference to her virginity had been redacted from the rape treatment center report, he could question her if she advised the rape treatment center that she had had sex before and had used contraceptives.   In response to the court's inquiry why counsel had asked the question, counsel explained it was in response to her direct testimony and the fact he expected her to say she was "afraid of her parents for other acts that she has done" as she told the rape treatment center doctor.   *Id.* at 562–64.   The court denied the defense's request to conduct further cross-examination regarding the victim's past sexual activity.

Given this record, counsel's strategy during cross-examination in attempting to elicit testimony from C.A. regarding her past sexual activities was reasonable.   *See, e.g., Brown v. State,* 846 So. 2d 1114, 1124 (Fla. 2003) (finding counsel was not ineffective for opening the door to

damaging testimony during the cross-examination of an FBI agent when trial counsel had a specific purpose for eliciting the testimony finding that it was a reasonable, strategic decision). Thus, the trial court's rejection of the claim finding it was a strategic decision was not error.  *See Dingle*, 480 F.3d at 1099 (a tactical decision amounts to ineffective assistance "only if it was 'so patently unreasonable that no competent attorney would have chosen it.'") (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).  Accordingly, relief is not warranted here.

## IV.    EVIDENTIARY HEARING

"[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'"  *Cullen*, 563 U.S. at 183 (quoting *Shriro v. Landrigan*, 550 U.S. 465, 474 (2007)).  The Court has reviewed the claims and has further assured itself that they do not warrant further evidentiary development.  *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").  Therefore, Petitioner's request for an evidentiary hearing should be denied.

## V.    CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, it is recommended that no Certificate of Appealability ("COA") issue.  A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000); *Wilkinson v. Dotson*, 544 U.S. 74, 78–83 (2005)).  This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. No certificate of appealability should issue here.

## VI.  RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the federal habeas Petition be **DENIED** and that final judgment be entered in favor of Respondent. Furthermore, the undersigned respectfully recommends a COA be **DENIED** and that the case be **CLOSED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable James Lawrence King, Senior United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 30th day of August, 2022.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Reginald Bertram Johnson, *Pro Se*
DC#280395
Walton Correctional Institution
Inmate Mail/Parcels
691 Institution Road
De Funiak Springs, FL 32433